1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERRENCE LAMAR WILBURN,                    No.  2:15-cv-00699-TLN-GGH

12              Plaintiff,

13        v.                                    ORDER AND FINDINGS &
                                                RECOMMENDATIONS
14   GARREN BRATCHER, et al.,

15              Defendants.

16

17        This matter is before the undersigned pursuant to Local Rule 302(c)(21).  Currently

18   pending before the court are the following motions: (1) plaintiff's motion to remand; (2)

19   defendants City of Sacramento, erroneously sued as Sacramento Police Department, Samuel D.

20   Somers, Jr. ("Officer Somers, Jr."), George Chargin ("Officer Chargin"), erroneously sued as G.

21   Chargin, Jose Yepes ("Officer Yepes"), erroneously sued as J. Yepes, Sameer Sood ("Officer

22   Sood"), erroneously sued as S. Sood, Bobby Daniels ("Officer Daniels"), Jeremy Ratcliffe

23   ("Officer Ratcliffe"), erroneously sued as J. Ratcliffe, and Kevin Patton's ("Officer Patton"),

24   erroneously sued as K. Patton (collectively "the City Defendants") motion to dismiss; (3)

25   defendants County of Sacramento, Sacramento County Sheriff's Department, Sheriff Scott Jones

26   ("Sheriff Jones"), Sacramento County District Attorney, Sacramento County Public Defender's

27   Office, Deputy District Attorney Laura West ("D.A. West"), Deputy Public Defender Teresa

28   Huang ("P.D. Huang"), Deputy Public Defender Larry Yee ("P.D. Yee"), and Deputy Hester's

                                              1

(collectively "the County Defendants") motion to dismiss; (4) defendant Helena Gweon's ("Judge Gweon") motion to dismiss; and (5) defendant Garren Bratcher's ("Bratcher") anti-SLAPP motion to strike. [1]

For the reasons discussed below, the court will recommend that plaintiff's motion to remand be denied. The court will also recommend that the defendants' motions to dismiss be granted and Bratcher's motion to strike be granted in part.

PROCEDURAL HISTORY

Plaintiff filed his complaint in Sacramento Superior Court on February 20, 2015, asserting claims for (1) violation of 42 U.S.C. §§ 1981, 1983 (Claim One); (2) violation of 42 U.S.C. § 1985(3) (Claim Two); (3) neglect to prevent deprivation of civil rights under 42 U.S.C. § 1986 (Claim Three); (4) false arrest and false imprisonment under California Government Code § 820.4 (Claim Four); (5) malicious prosecution and abuse of process (Claim Five); (6) denial of civil rights and discrimination under California Civil Code §§ 51, 51.5, 51.7, and 52 (Claim Six); (7) failure to discharge mandatory duty under California Government Code § 815.6 (Claim Seven); (8) negligence under California Government Code § 815.2 (Claim Eight); (9) assault and battery (Claim Nine); (10) conspiracy (Claim Ten); (11) intentional or reckless infliction of emotional distress (Claim Eleven); (12) negligent infliction of emotional distress (Claim Twelve); and (13) improper use of internet website under California Penal Code § 290.4 (Claim Thirteen). ECF No. 1-1 at 7, 32–39. Plaintiff asserts each and every claim against each and every defendant. Id. at 32–39.

On March 27, 2015, the City Defendants removed the action to this court based on the existence of a federal question and paid the filing fee. ECF No. 1. On April 3, 2015, the City Defendants filed a motion to dismiss plaintiff's claims, arguing that plaintiff failed to allege facts sufficient to support a claim pursuant to Rule 12(b)(6). ECF No. 5. On April 20, 2015, plaintiff filed a motion to remand that was not properly noticed for hearing in front of the undersigned and

---

[1] Bratcher frames his motion to strike pursuant to California's anti-SLAPP statute as a motion to dismiss. It is, however, a motion to strike for all intents and purposes. It does not, in fact, argue that plaintiff has failed to allege facts sufficient to state a claim except to the extent that plaintiff's claims are subject to an anti-SLAPP motion to strike.

a motion to proceed in forma pauperis.  ECF Nos. 6, 7.  On April 23, 2015, the County

Defendants filed a notice of consent to removal along with a motion to dismiss plaintiff's claims

arguing that (1) plaintiff fails to allege facts sufficient to state a federal claim; (2) plaintiff's state

law claims fail because his complaint does not allege compliance with the California Tort Claims

Act ("Claims Act"); and (3) plaintiff's claims against D.A. West are barred by prosecutorial and

statutory immunity.  ECF No. 9.  On the same day, the City Defendants filed an opposition to

plaintiff's motion to remand along with an application to amend their notice of removal

requesting to incorporate (1) a consent to removal signed by the County Defendants and Bratcher

and (2) proofs of service for every defendant except Judge Gweon, who had yet to be served.

ECF Nos. 11, 12.

On April 27, 2015, Bratcher separately filed his notice of consent to removal.  ECF No.

13.  On April 30, 2015, Bratcher also filed a motion to strike plaintiff's claims pursuant to

California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  ECF No. 15.  Finally, Bratcher

requests in support of his motion to strike that the court take judicial notice of plaintiff's state

court complaint and the City Defendants' notice of removal.  ECF No. 16.  On May 8, 2015,

plaintiff filed another motion to remand as well as an opposition to the City Defendants' and the

County Defendants' motions to dismiss.  ECF Nos. 17, 18.  On May 13, 2015, Judge Gweon filed

a motion to dismiss plaintiff's claims arguing that (1) they are barred by the doctrine of judicial

immunity; (2) plaintiff fails to allege facts sufficient to state a federal claim; and (3) plaintiff's

state law claims fail because his complaint does not allege compliance with the Claims Act.  ECF

Nos. 20, 21.  Judge Gweon also filed a request in support of her motion to dismiss for judicial

notice of plaintiff's state court complaint.  ECF No. 22.  On May 22, 2015, the City Defendants

and the County Defendants both filed replies to plaintiff's opposition to their motions to dismiss.

ECF Nos. 25, 26.

On May 27, 2015, the court vacated the hearing set for the City Defendants' and the

County Defendants' motions to dismiss and submitted the motions on the papers.  ECF No. 27.

On June 4, 2015, plaintiff filed his final motion to remand noticed for hearing on August 6, 2015.

ECF No. 28.  On June 8, 2015, plaintiff filed an opposition to Bratcher's motion to dismiss.  ECF

1   No. 31.  On June 10, 2015, the court vacated the hearings set for Bratcher's motion to dismiss,

2   Judge Gweon's motion to dismiss, and plaintiff's motion to remand and ordered these motions to

3   be taken under submission once the time for filing oppositions and replies passed.  ECF No. 32.

4   On June 11, 2015, Bratcher filed a reply to plaintiff's opposition.  ECF No. 33.

5          On July 8, 2015, plaintiff filed a motion for leave to amend his complaint as well as a

6   motion to strike defendants' motions to dismiss.  ECF Nos. 34, 35.  On the same day, plaintiff

7   filed an opposition to Judge Gweon's motion to dismiss.  ECF No. 36.  On July 30, 2015, Judge

8   Gweon filed a reply to plaintiff's opposition.  ECF No. 38.  On August 28, 2015, the court

9   vacated the hearings set for plaintiff's motion for leave to amend and motion to strike and

10  submitted them on the papers.  ECF No. 49.  On October 19, 2015, the court issued an order

11  denying plaintiff's motion for leave to amend, motion to strike, and motion to proceed in forma

12  pauperis.  ECF No. 50.  The court's order also granted the City Defendants' application to amend

13  their notice of removal and ordered defendants to file an opposition to plaintiff's motion to

14  remand within fourteen days.  Id.  On November 2, 2015, defendants filed a joint opposition to

15  plaintiff's motion to remand.  ECF No. 51.  Plaintiff then filed a reply, improperly captioned an

16  "answer," to defendants' opposition along with a request for judicial notice.  ECF Nos. 52, 53.

17                              FACTUAL BACKGROUND

18         Plaintiff was convicted of assault with intent to rape, Cal. Penal Code § 220, in

19  Sacramento Superior Court on December 5, 2002.  ECF No. 1-1 at 11.  Accordingly, pursuant to

20  California Penal Code § 290, plaintiff was required to register as a sex offender upon his release

21  from prison.  Id.  Plaintiff was released on May 7, 2004, on parole, and discharged from parole on

22  May 7, 2007.  Id.  By 2013 plaintiff was homeless, and pursuant to California Penal Code §

23  290.011 was required to check in with the Sexual Assault Felony Enforcement (SAFE) Task

24  Force every thirty days.  Id.

25         Plaintiff alleges his bicycle was stolen on January 20, 2014, but that he then found it in a

26  walkway between a bookstore and Loaves and Fishes Friendship Park ("Friendship Park") shortly

27  thereafter.  Id. at 12.  Plaintiff took his frame to Friendship Park but was told by an unnamed

28  individual that he could not keep his bike there.  Id.  Plaintiff got into an argument with this

4

1    individual, and was ultimately banned from the park by Bratcher. Id. On February 20, 2014,

2    Officer Sood arrested plaintiff for failure to abide by California Penal Code § 290.011's 30-day

3    check in requirement. Id. at 13. Although plaintiff's complaint is somewhat unclear on this

4    point, he seems to allege that Bratcher called the police to report him for violating § 290.011. See

5    id. at 16–17. Plaintiff also alleges that *someone* must have told Bratcher he violated § 290.011's

6    thirty-day check in requirement, and that doing so was a violation of California Penal Code §

7    290.4.[2] Id. at 17.

8           Plaintiff claims that during his trial for violation of § 290.011 a number of individuals,

9    including someone who goes unnamed and his public defender (P.D. Huang) "colluded" with the

10   prosecution (D.A. West) to mislead the presiding judge (Judge Gweon). Id. at 13–14. Plaintiff

11   also claims that P.D. Huang, D.A. West, and Judge Gweon colluded in order to wrongly convict

12   him. Id. at 14.

13          On May 9, 2014, P.D. Huang visited plaintiff at the Rio Consumes Correction Center with

14   P.D. Yee, to explain to plaintiff that P.D. Yee would be representing him from then on. Id. At

15   plaintiff's bail reduction hearing on May 21, 2014, P.D. Yee stated that plaintiff was continuing

16   to trial "as an 'act of civil disobedience.'" Id. at 15. Upon hearing this, plaintiff "asked

17   immediately for a Marsden hearing.[3] Id. "Defendant Gweon denied [] [p]laintiff's Marsden

18   [m]otion" the next day. Id. On May 23, 2014, however, plaintiff "fired" P.D. Yee and proceeded

19   to represent himself. Id. Eventually, on July 23, 2014, the State dismissed all charges against

20   plaintiff and released him because he had, by that point, been detained for an amount of time

21   equivalent to any sentence he could receive. Id. at 16.

22   ////

23   ////

24   
     _____

25   [2] Plaintiff does not explain how reporting him for a violation of § 290.011 might itself constitute
     a violation of § 290.4.

26   [3] In California, a motion by a litigant requesting the court to appoint him substitute counsel is
     called a "Marsden motion." Schell v. Witek, 218 F.3d 1017, 1021 (9th Cir. 2000) (citing People

27   v. Marsden, 2 Cal. 3d 118 (1970)). "Normally, the essence of such a motion is that appointed
     counsel's representation has in some significant measure fallen below the level required by the

28   Sixth Amendment." Id.

1              DISCUSSION

2    I.       Motion to Remand

3             A.       Legal Background

4             A district court may remand to state court a case that has been removed to the district

5    court if at any time it appears that the district court lacks subject matter jurisdiction.  28 U.S.C. §

6    1447(c).  Federal courts construe removal statutes strictly to limit removal jurisdiction.  Shamrock

7    Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th

8    Cir. 1992).  Removal is generally proper when the district courts have original jurisdiction over

9    the action.  See 28 U.S.C. § 1441; Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).

10   Jurisdiction must be determined from the face of the complaint, Caterpillar Inc. v. Williams, 482

11   U.S. 386, 392 (1987), and it must be clear from the face of the complaint under the well-pleaded

12   complaint rule that federal subject matter jurisdiction exists, Oklahoma Tax Comm'n. v. Graham,

13   489 U.S. 838, 840–41 (1989) (per curiam).

14            Procedures for removal are prescribed by 28 U.S.C. § 1446.  If a defendant or defendants

15   desire to remove a civil action from state court to federal court, they must file "a notice of

16   removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a

17   short and plain statement of the grounds for removal, together with a copy of all process,

18   pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C.

19   § 1446(a).  Subdivision (b) of § 1446 specifies the "notice of removal of a civil action or

20   proceeding shall be filed within thirty days after the receipt by the defendant, through service or

21   otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such

22   action or proceeding is based . . . ." 28 U.S.C. § 1446(b).  When there is more than one defendant

23   in the action, "[a]ll defendants who have been properly . . . served in the action must join a

24   petition for removal."  Destfino v. Reiswig, 630 F.3d 952, 956 (9th Cir. 2011) (internal quotation

25   marks omitted).  This is commonly referred to as the unanimity requirement.  Defendants may

26   also meet the unanimity requirement by amending the notice of removal within thirty (30) days of

27   its filing.  See, e.g., Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1050, 1052

28   (N.D. Cal. 2009) aff'd sub nom. Hafiz v. Greenpoint Mortgage Funding, 409 F. App'x 70 (9th

1    Cir. 2010) ("Barring these exceptions, all defendants must either join or provide within thirty

2    days consent to the removal notice.").

3       Failure to comply with the thirty-day time limitation or the unanimity requirement renders

4    the removal procedurally defective.  See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1

5    (9th Cir. 1988).  Procedural defects in removal, however, are not jurisdictional.  Rather, such

6    defects are modal and may be waived.  Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th

7    Cir. 1980); Hernandez v. Six Flags Magic Mountain, Inc., 688 F. Supp. 560, 562 (C.D. Cal.

8    1988).

9       B.     Analysis

10       Plaintiff seeks remand on two grounds (1) plaintiff's complaint does not contain a federal

11    question, and (2) the County Defendants, Bratcher, and Judge Gweon all failed to join the City

12    Defendants' notice of removal.  As the court explained in its October 19, 2015, order, plaintiff's

13    assertion that his complaint does not include a federal question is simply incorrect.  ECF No. 50

14    at 9.  Plaintiff's complaint asserts federal claims against defendants for violation of 42 U.S.C. §§

15    1981, 1983, 1985(3), and 1986.  Accordingly, the court has subject matter jurisdiction over

16    plaintiff's complaint.

17       The court also finds that the City Defendants' removal of this case was not procedurally

18    improper.  As the court held in its October 19, 2015, order, the City Defendants' amendment of

19    their notice of removal (ECF No. 12) cured its defectiveness as to every defendant but Judge

20    Gweon.  Plaintiff claims in his reply that this holding was erroneous because Bratcher did not file

21    a consent to removal until *thirty-one* days after the notice of removal was filed, see ECF No. 13,

22    making his consent untimely.  ECF No. 53.  Plaintiff's contention, however, ignores the fact that

23    the City Defendants' motion for leave to amend their notice of removal *also* includes Bratcher's

24    consent to removal.  ECF No. 12, Exhibit 1.  That request for leave to amend was filed twenty-

25    seven days after the initial notice of removal.  See ECF No. 1, 12.  Why Bratcher then filed a

26    second copy of his consent is unknown, but also inconsequential.  Bratcher's consent to removal

27    was filed twenty-seven days after the initial notice of removal.  Accordingly, plaintiff's argument

28    is unavailing.

1   As to Judge Gweon, the court finds that she was never properly served and accordingly,

2   her deadline for the filing of a consent to removal was never triggered.  Defendants claim that

3   Judge Gweon has yet to be properly served and accordingly, it is not necessary that she file a

4   consent to removal.  ECF No. 51; see also Destfino, 630 F.3d at 957 ("Because service on the

5   Kim defendants was defective, their joinder in the petition wasn't required.").  Plaintiff claims,

6   however, that Judge Gweon was personally served on March 4, 2015, along with every other

7   defendant.  ECF No. 52.  If true, this would mean that Judge Gweon was properly served before

8   notice of removal was filed and her failure to file a consent to removal would render removal

9   procedurally defective.  28 U.S.C. § 1446(b).  However, two things convince the court that

10  contrary to plaintiff's assertion, Judge Gweon was not served in accordance with California law.

11  First, plaintiff's reply does not include any proof of service upon Judge Gweon.  Second,

12  plaintiff's request for judicial notice includes a "Declaration of Melvin Jeanmard Re: Diligence,"

13  which states that Mr. Jeanmard served Judge Gweon by mail on March 13, 2015.  ECF No. 53,

14  Exhibit B.[4]  Service by mail is not complete under California law, however, until the person to be

15  served executes an "acknowledgement of receipt of summons."  Cal. Civ. Proc. Code § 415.30.

16  Plaintiff has filed no such acknowledgement with the court.  Accordingly, the court finds the

17  Judge Gweon has not been properly served and her failure to file a consent to removal does not

18  render removal procedurally improper.[5]

19  II.     Defendant Garren Bratcher's Anti-SLAPP Motion to Strike

20  On April 30, 2015 (ECF No. 15), defendant Garren Bratcher filed a motion to dismiss in

21  which he argued that California's anti-SLAPP law had been violated by virtue of being sued by

---

[4]  The court will grant plaintiff's request for judicial notice of this document, as explained in more detail in Section V.

[5]  Plaintiff also challenges the court's denial of his application to proceed in forma pauperis in his reply, arguing that it provides defendants, who can file documents electronically, with an unfair advantage.  Plaintiff, however, seems to misunderstand the effects of being granted in forma pauperis status.  Being granted in forma pauperis status does not mean that a pro se party may file documents electronically at no cost, it simply relieves him or her from the obligation of paying *filing fees*.  28 U.S.C. § 1915 (allowing a party who submits the appropriate affidavit to commence an action without the pre-payment of fees).  As the court explained in its order denying his application, plaintiff does not need to be granted in forma pauperis status because defendants have already paid the filing fee in this matter.  ECF No. 50 at 7.

8

1  plaintiff herein because Bratcher had phoned the police concerning alleged criminal activity by

2  plaintiff.

3      A.    Legal Background

4      California enacted California Code of Civil Procedure § 425.16 to curtail "strategic

5  lawsuits against public participation," known as "SLAPP" actions, finding "a disturbing increase

6  in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of

7  speech and petition for redress of grievances." § 425.16(a). SLAPPs "masquerade as ordinary

8  lawsuits but are brought to deter common citizens from exercising their political or legal rights or

9  to punish them for doing so." Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal

10  quotation marks omitted). Because "it is in the public interest to encourage continued

11  participation in matters of public significance, and [because] this participation should not be

12  chilled through abuse of the judicial process," the anti-SLAPP statute is to be construed broadly.

13  § 425.16(a).

14      California courts apply a two-step process for analyzing an anti-SLAPP motion. Hilton v.

15  Hallmark Cards, 599 F.3d 894, 903 (9th Cir. 2010). Under the first prong, the moving party must

16  make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in

17  furtherance of the right of petition or free speech under the United States or California

18  Constitution in connection with a public issue,' as defined in the statute." Equilon Enters., LLC

19  v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002) (quoting Cal. Code Civ. Proc. § 425.16(b)(1)).

20  Under the second prong, the burden shifts to the plaintiff to show "a probability of success on the

21  merits." Hilton, 599 F.3d at 902. Under this standard, the claim should be dismissed if the

22  plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the

23  plaintiff, "no reasonable jury could find for the plaintiff." Metabolife Int'l, Inc. v. Wornick, 264

24  F.3d 832, 840 (9th Cir. 2001) (citation and internal quotation marks omitted).

25      In federal court, the second prong of California's anti-SLAPP statute is applied somewhat

26  uniquely. "If a defendant makes an anti-SLAPP motion to strike founded on purely legal

27  arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual

28  challenge, then the motion must be treated as though it were a motion for summary judgment and

9

1  discovery must be permitted." Z.F. v. Ripon Unified Sch. Dist., 482 F. App'x 239, 240 (9th Cir.

2  2012) (citing Metabolife Int'l, Inc., 264 F.3d at 846).  This distinction is important because Rule

3  56 effectively prohibits courts from disposing of motions involving a factual challenge before

4  discovery has concluded.  See Metabolife Int'l, Inc., 264 F.3d at 846 (holding that California

5  Civil Procedure Code § 425.16(g)'s automatic stay of discovery does not apply in federal court

6  because it conflicts with Rule 56(a)'s presumption that discovery takes place before a motion for

7  summary judgment is considered).

8        Finally, § 425.16 applies in diversity matters, and to state supplemental claims in federal

9  question matters.  Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1184 (9th Cir. 2013).  Section

10 425.16 does *not* apply, however, to federal claims in accordance with the Erie Doctrine.  In re

11 Bah, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("[W]e do not believe that the anti-SLAPP statute

12 may be applied to federal causes of action."); Bulletin Displays, LLC v. Regency Outdoor

13 Advert., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).

14       B.      Analysis

15       The court finds that Bratcher's motion meets both prongs of California's anti-SLAPP test

16 as to plaintiff's state law claims.  Accordingly, the court will recommend that Bratcher's motion

17 to strike be granted as to plaintiff's state law claims.  In light of the fact that California's anti-

18 SLAPP statute cannot be used to strike federal claims in federal court the court will recommend

19 that defendant's motion be denied as to plaintiff's federal claims.  However, the court also finds

20 that plaintiff cannot possibly win relief on his federal claims as pleaded and accordingly, will

21 recommend that they be dismissed *sua sponte* with leave to amend.

22            1.     Protected Speech

23       In accordance with the first prong of the anti-SLAPP test Bratcher must establish that the

24 acts that gave rise to plaintiff's claims were done "in furtherance of the right of petition or free

25 speech under the United States or California Constitution in connection with a public issue."  Cal.

26 Civ. Proc. Code § 425.16(b)(1).  According to Bratcher, plaintiff's claims arise out of a call he

27 made to the police reporting plaintiff's refusal to leave the premises of Loaves and Fishes, an

28 entity where Bratcher works.  ECF No. 15-1 at 5.  Defendant argues that such calls are considered

1  protected speech under § 425.16(e)(2), which protects "any written or oral statement or writing

2  made in connection with an issue under consideration or review by a legislative, executive, or

3  judicial body, or any other official proceeding authorized by law."  Statements to the police are

4  indeed protected by § 425.16.  Comstock v. Aber, 212 Cal. App. 4th 931, 942 (2012).

5        Plaintiff's opposition argues that the events giving rise to his claims are not protected by §

6  425.16 for a number of reasons.  The court will address each one in turn.  First, plaintiff argues

7  that it cannot be correct that Bratcher "has a right to violate the civil rights of all transient patrons

8  of Friendship Park, including plaintiff Terrence Wilburn ("Wilburn"), under an ill-conceived

9  guise of reporting a crime."  ECF No. 31 at 3.  Plaintiff goes on to argue that defendant's

10  understanding of the law would effectively allow any person to report crimes not actually

11  committed by innocent people with impunity in violation of the constitutional right to privacy.

12  Id. at 3–4.  Though it is somewhat unclear what plaintiff means by this, to the extent he is arguing

13  that § 425.16 does not protect statements to the police, he is incorrect.  Comstock, supra.  See also

14  Yates v. Allied Intern. Credit Corp, 578 F. Supp. 2d 1251, 1254 (S.D. Cal. 2008) (remedy for a

15  false police report is a criminal prosecution for such activity, not a civil action).

16        Plaintiff also argues that his claims are not based on allegations that Bratcher called the

17  police at all, but on allegations of a conspiracy between Bratcher and the Sacramento Police

18  Department.  ECF No. 31 at 6.  At one point, plaintiff goes as far as to state that "City of

19  Sacramento Defendants is in error in their Motion to Dismiss when Defendants state that Garren

20  Bratcher allegedly called the Sacramento Police Department to report a crime."  Id.  The court

21  finds, however, that a plain reading of plaintiff's complaint shows his claims are indeed based on

22  the allegation that Bratcher called the Sacramento Police Department.

23        First and foremost, plaintiff's assertion that he does not allege Bratcher called the police is

24  simply incorrect.  Plaintiff's complaint clearly alleges that Bratcher called to report a crime being

25  committed by plaintiff.  ECF No. 1-1 at 16–17.  In fact, plaintiff's own opposition repeats this

26  allegation.  ECF No. 31 at 7 ("Bratcher called to report a crime being committed by the

27  plaintiff.").

28        Plaintiff's argument that his claims are based on a larger conspiracy between Bratcher and

11

1  the police department, not Bratcher's call, is also unconvincing.  As to Bratcher, plaintiff alleges

2  the following facts, and only the following facts: (1) Bratcher banned plaintiff from Friendship

3  Park, and (2) Bratcher called the police to report plaintiff for committing a crime, possibly failing

4  to register as a sex offender.  ECF No. 1-1 at 12–13, 16–17, 21.  Bratcher's call to the police

5  occurred on an unspecified date after he banned plaintiff from Friendship Park.  Id.  Plaintiff

6  further alleges that an unknown police officer *must have* informed Bratcher of his failure to

7  register as a sex offender, otherwise he would not have known to call the police in the first place.

8  Id. at 17.  Plaintiff characterizes this exchange of information as evidence of the conspiracy that

9  gave rise to his complaint.

10         Plaintiff's conspiracy claim, however, constitutes a legal conclusion not entitled to the

11  presumption of truth at the motion to dismiss stage.  Moss v. U.S. Secret Serv., 572 F.3d 962, 970

12  (9th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  *Even if* the court accepted as

13  true plaintiff's assertion that an unnamed police officer informed Bratcher that plaintiff had failed

14  to register as a sex offender (and plaintiff does not give any explanation for how he could know

15  this) there would be no facts to support a larger conspiracy.  Vague allegations of a conspiracy to

16  do plaintiff harm simply do not constitute facts.  Burns v. Cty. of King, 883 F.2d 819, 821 (9th

17  Cir. 1989) ("To state a claim for a conspiracy to violate one's constitutional rights under section

18  1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy.").

19  Accordingly, the court is left with the factual allegation that Bratcher called the police to report

20  plaintiff for committing a crime, a call that he alleges lead to his wrongful arrest and detention by

21  the City of Sacramento.  In light of the foregoing, the court finds that Bratcher has met his burden

22  under the first prong of the anti-SLAPP test.

23                    2.    Probability of Success on the Merits

24         With regards to the second prong of the anti-SLAPP statute, Bratcher argues that plaintiff

25  cannot show a probability of success on his claims because Bratcher is immune from liability

26  under California Civil Code § 47(b).  Under California law, "[a]n absolute privilege attaches to

27  publications made '[i]n any (1) legislative or (2) judicial proceeding, or (3) in any other official

28  proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized

1   by law and reviewable [by a mandate action].'"  Hunsucker v. Sunnyvale Hilton Inn, 23 Cal. App.

2   4th 1498, 1502 (1994).  Communications to police regarding potential criminal activity fall within

3   this absolute privilege.  Hagberg v. California Fed. Bank FSB, 32 Cal. 4th 39, 370 (2004).  That

4   privilege does not, however, protect against malicious prosecution claims.  Id. at 360.  It is,

5   moreover, unclear whether the privilege protects against Unruh Civil Rights Act claims.  See id.

6   at 376 ("[W]e have concluded that this is not an appropriate case in which to resolve the broad

7   legal question whether proof that a business establishment has called for police assistance (or has

8   a policy of calling for police assistance) based on racial or ethnic prejudice could give rise to

9   liability under the Unruh Civil Rights Act notwithstanding the provisions of section 47(b).").

10  Plaintiff's opposition does not specifically discuss § 47(b) or otherwise argue that

11  communications to the police are not absolutely privileged under California law.  Accordingly, in

12  light of the foregoing authority, the court finds that plaintiff has not shown a probability of

13  success on the merits of his claims to which § 47(b) applies: Claim Four and Claims Seven

14  through Thirteen.[6]

15      Moreover, the court also finds that plaintiff has not shown a probability of success on the

16  merits of those claims to which § 47(b) arguably does *not* apply: Claim Five (malicious

17  prosecution) and Claim Six (Unruh Civil Rights Act).  Plaintiff's opposition does not explicitly

18  discuss his probability of succeeding on any of his claims individually.  However, a review of

19  plaintiff's complaint reveals that he fails to allege facts sufficient to state either claims.

20      "Three elements must be pleaded and proved to establish the tort of malicious

21  prosecution: (1) A lawsuit was commenced by or at the direction of the defendant [which] was

22  pursued to a legal termination in . . . plaintiff's [ ] favor; (2) the prior lawsuit was brought without

23  probable cause; and (3) the prior lawsuit was initiated with malice."  Daniels v. Robbins, 182 Cal.

24  _____

25  [6]  Claim Five is entitled "malicious prosecution and abuse of process."  ECF No. 1-1 at 7.  These
    are, in fact, two different claims.  Section 47(b) does not apply to claims for malicious
26  prosecution, but it does apply to claims for abuse of process.  Bisno v. Douglas Emmett Realty
    Fund 1988, 174 Cal. App. 4th 1534, 1550 (2009) (noting that § 47(b) "applies to all tort causes of
27  action except malicious prosecution").  Accordingly, the court finds that plaintiff has not shown a
    probability of success on the merits of his abuse of process claim based on § 47(b)'s absolute
28  immunity provision.  The court addresses plaintiff's malicious prosecution claim below.

1    App. 4th 204, 216 (2010) (internal quotation marks omitted).

> A "'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution."

Sycamore Ridge Apartments, LLC v. Naumann, 157 Cal. App. 4th 1385, 1399 (2007) (quoting Lackner v. LaCroix, 25 Cal. 3d 747, 751 (1979)).  Plaintiff alleges that the criminal charges against him were dropped because the prosecution concluded he had already been detained for a time equivalent to what he might receive if he were convicted and sentenced.  ECF No. 1-1 at 16.  Such a dismissal does not reflect on plaintiff's innocence or guilt.  Accordingly, plaintiff has not alleged facts sufficient to state a claim for malicious prosecution because he has not shown the underlying criminal case was terminated in his favor.

Plaintiff's complaint does not allege facts sufficient to state a claim for violation of the Unruh Civil Rights Act because it simply does not allege that he has been discriminated against based on a specified classification.[7]  "The Unruh Civil Rights Act prohibits businesses from denying any person access to public accommodations based on specified classifications."  Hessians Motorcycle Club v. J.C. Flanagans, 86 Cal. App. 4th 833, 835 (2001).  Although it explicitly prohibits discrimination against individuals based on "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, [and] sexual orientation," Cal. Civ. Code § 51(b), those categories are "illustrative, rather than restrictive," Hessians Motorcycle Club, 86 Cal. App. 4th at 836.  Plaintiff alleges in general terms that he has been discriminated against and that his civil rights have been violated.  Without facts showing that plaintiff has been discriminated against arbitrarily based on his belonging to a particular group, plaintiff cannot state a claim for violation of the Unruh Civil Rights Act.

---

[7]  Plaintiff does generally allege that his right to be "free from conspiracy, violence, threat, punishment, retaliation, discrimination, intimidation, interference, *or oppression because of race*" was infringed.  ECF No. 1-1- at 25 (emphasis added).  However, he does not explain *who* actually discriminated against him based on race or *how*.

In addition, plaintiff's complaint utilizes a form of pleading that is both counterproductive and infamous: shotgun pleading. Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. They are unacceptable. Federal pleading standards require that plaintiffs give the defendants a clear statement about what the defendants allegedly did wrong. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) ("Under Rule 8(a), the plaintiff must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (internal quotation marks omitted)). One common type of shotgun pleading is where the plaintiff recites a collection of general allegations toward the beginning of the complaint, and then each count incorporates every antecedent allegation by reference. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." Id.

Both plaintiff's claims for malicious prosecution and violation of the Unruh Civil Rights Act, as well as every other claim, utilize this form of shotgun pleading. While it is proper to generally allege in a factual section background facts which will be applicable to all claims, plaintiff's claims incorporate by reference twenty-six pages of factual allegations, regardless of their relevance. ECF No. 1-1 at 32–38. This approach greatly exacerbates the elusive nature of plaintiff's allegations, and especially his claims of conspiracy between each and every defendant.

Accordingly, the court finds that plaintiff has failed to show a probability of success on the merits of his state law claims and will recommend that Bratcher's anti-SLAPP motion to strike be granted as to them.

C.    Plaintiff's Federal Claims Against Bratcher

The court will also recommend that plaintiff's federal claims against Bratcher, Claims One through Three, be dismissed *sua sponte* because plaintiff cannot possibly win relief as pleaded. "A trial court may dismiss a claim *sua sponte* under Fed. Civ. P. 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief." Omar v.

15

1   Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987).  As the court explains above, plaintiff's

2   shotgun pleading method does not comply with Rule 8.  Plaintiff utilizes this method for each and

3   every claim.  More importantly, for the reasons expressed infra, plaintiff has not satisfied the

4   pleading elements for these claims.  Accordingly, plaintiff cannot possibly win relief on his

5   remaining federal claims as pleaded, and the court will recommend that they be dismissed *sua*

6   *sponte* with leave to amend.

7   III.    Defendant Helena Gweon's Motion to Dismiss

8           A.      Legal Background

9           A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

10  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

11  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

12  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

13  plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see

14  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

15  a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

16  is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

17  Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

18  factual content that allows the court to draw the reasonable inference that the defendant is liable

19  for the misconduct alleged."  Id.

20          In considering a motion to dismiss for failure to state a claim, the court accepts all of the

21  facts alleged in the complaint as true and construes them in the light most favorable to the

22  plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

23  however, required to accept as true conclusory allegations that are contradicted by documents

24  referred to in the complaint, and [the court does] not necessarily assume the truth of legal

25  conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

26  1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

27  prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

28  to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

1   *Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc); accord *Balistreri v. Pacifica Police*

2   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

3   particularly where civil rights claims are involved"); see also *Hebbe v. Pliler*, 627 F.3d 338, 342

4   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

5   evaluating them under the standard announced in *Iqbal*).

6       In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

7   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

8   matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506

9   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

10  consider a memorandum in opposition to a defendant's motion to dismiss to determine the

11  propriety of a Rule 12(b)(6) motion, see *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194,

12  1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

13  whether to grant leave to amend, see, e.g., *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir.

14  2003).

15      B.    Analysis

16      The court finds that Judge Gweon is immune from suit based on the complaint's

17  allegations and will accordingly recommend that her motion to dismiss be granted.

18      Judges are absolutely immune, under the doctrine of judicial immunity, for acts performed

19  in their judicial capacities.  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 & n.10 (1993);

20  *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam); *Stump v. Sparkman*, 435 U.S. 349, 357–60

21  (1978); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc).  Plaintiff alleges that

22  Judge Gweon conspired with prosecutors as well as his own counsel to obtain a conviction in his

23  criminal case.  However, allegations that judges acted in a conspiracy with other actors in a

24  litigation process does not abrogate judicial immunity.  *Moore v. Brewster*, 96 F.3d 1240, 1244

25  (9th Cir. 1996).[8]  Plaintiff also alleges that Judge Gweon exceeded her jurisdiction, however that

26  allegation standing alone is insufficient to defeat judicial immunity.  The "clear absence of all

27

28  [8] *Moore* has been held to be superseded by statute on other grounds.  *Meinhold v. Spectrum*, 2007 W.L. 1456141 (E.D. Cal. 2007).

jurisdiction" exception to the doctrine of judicial immunity means a clear lack of all subject matter jurisdiction.  Miller v. Davis, 521 F.3d 1142, 1147 (9th Cir. 2008); see also O'Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir. 1981) (holding that a judge who convicted defendant for contempt, an act within the court's jurisdiction, but without the affidavit required by statute to confer jurisdiction over the offense charged was still entitled to immunity; his act was merely in excess of his jurisdiction).  There is no plausible contention that Judge Gweon lacked subject matter over plaintiff's criminal proceedings.

Because the court finds that Judge Gweon is judicially immune from suit it will recommend that her motion to dismiss be granted.[9]  The court further finds that no reasonable possibility exists that plaintiff will be able to fashion arguable allegations that this judge acted in an absence of jurisdiction.  This dismissal is recommended without leave to amend.

IV.    The City Defendants' and County Defendants' Motions to Dismiss[10]

The court finds that plaintiff has failed to state a claim against either the City Defendants or the County Defendants and will accordingly recommend that their motions to dismiss be granted.  The court will further recommend that Claims Nine through Twelve be dismissed without leave to amend as to the City of Sacramento, the County of Sacramento, the Sacramento Police Department, Sacramento County District Attorney, and Sacramento County Sheriff's Department ("Entity Defendants") and that Claim Thirteen be dismissed without leave to amend as to the City Defendants and the County Defendants.

A.    Defendant Laura West

The court finds that D.A. West is absolutely immune from plaintiff's claims based on the facts alleged.  Prosecutors are absolutely immune from suit for actions "intimately associated with the judicial phase of the criminal process," such as the prosecutor's initiation of a prosecution and presentation of the state's case.  Imbler v. Pachtman, 424 U.S. 409, 424 (1976);

---

[9]  In light of the court's recommendation that Judge Gweon's motion to dismiss be granted on judicial immunity grounds the court declines to reach her remaining arguments.

[10] The City Defendants and County Defendants submitted separate motions to dismiss.  The court will, however, address them simultaneously because the County Defendants joined in the City Defendants' motion.  In addition, plaintiff filed one opposition to both the County Defendants' and the City Defendants' motions.

1   see also Stapley v. Pestalozzi, 733 F.3d 804, 808 (9th Cir. 2013). "Absolute prosecutorial

2   immunity is meant to protect[ ] the prosecutor from harassing litigation that would divert his time

3   and attention from his official duties and to enabl[e] him to exercise independent judgment when

4   deciding which suits to bring and in conducting them in court." Torres v. Goddard, 793 F.3d

5   1046, 1051 (9th Cir. 2015) (internal quotation marks omitted). A prosecutor is absolutely

6   immune as long as she is "performing the traditional functions of an advocate." Kalina v.

7   Fletcher, 522 U.S. 118, 118 (1997). Plaintiff's complaint describes, in the factual summary prior

8   to his claims, his interactions with D.A. West during his criminal case, some of her filings, and

9   some of her interactions with the court. None of what plaintiff alleges falls outside of the

10  prosecutor's usual duty to present the state's case. Plaintiff also alleges in conclusory terms that

11  D.A. West colluded with other defendants, misled the court, and improperly applied the law. Id.

12  at 13, 14. But as the court has already explained, such conclusory legal claims are not entitled to

13  the presumption of truth, and in any event, do not negate the immunity. Accordingly, the court

14  will recommend that the County Defendants' motion to dismiss be granted as to D.A. West.

15  However, because the touchstone of prosecutorial immunity is "the nature of the function

16  performed, not the identity of the actor who performed it," Torres, 793 F.3d at 1051 (quoting

17  Kalina, 522 U.S. at 125), the court will also recommend plaintiff be granted leave to amend. If

18  plaintiff chooses to file an amended complaint containing claims against D.A. West he must

19  explain why it is prosecutorial immunity does not bar his claims.

20  B.      Section 1981

21  For reasons that go unstated, neither the City Defendants nor the County Defendants move

22  to dismiss plaintiff's § 1981 claims against them. Regardless however, the court finds that

23  plaintiff's § 1981 claims are appropriate for *sua sponte* dismissal because plaintiff cannot

24  possibly win relief.

25  Section 1981 provides:

26          All persons within the jurisdiction of the United States shall have
            the same right in every State and Territory to make and enforce
27          contracts, . . . and to the full and equal benefit of all laws and
            proceedings for the security of persons and property as is enjoyed
28          by white citizens, and shall be subject to like punishment, pains,

19

1   penalties, taxes, licenses, and exactions of every kind, and to no
    other.

2

3   42 U.S.C. § 1981(a).  Section 1981 prohibits discriminatory private conduct as well as such

4   conduct taken under color of state law.  Pittman v. Oregon, Employment Dept., 509 F.3d 1065,

5   1068 (9th Cir. 2007) ("§ 1981 by its terms prohibits private discrimination as well as

6   discrimination under color of state law . . . .").  To state a prima facie case under § 1981, plaintiff

7   must allege, at a minimum, facts showing that (1) he is a member of a protected class, (2) he

8   attempted to contract for certain services, and (3) he was denied the right to contract for those

9   services.  Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1145 (9th Cir. 2006).

10       Plaintiff simply does not allege that he is a member of a protected class, or, for that

11  matter, that he attempted to contract for but was denied certain services.  Accordingly, the court

12  finds that plaintiff has plainly not stated a claim for violation of § 1981 against either the City

13  Defendants or the County Defendants and will recommend that those claims be dismissed with

14  leave to amend.

15       C.      Section 1983

16       The court also finds that plaintiff has failed to allege facts sufficient to state a § 1983

17  claim against either the City Defendants or the County Defendants.

18       Section 1983 provides as follows:

19          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
20          deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at
21          law, suit in equity, or other proper proceeding for redress.

22  Plaintiff must allege "personal participation" in the alleged constitutional violation on the part of

23  an individual to subject that person to individual liability; this is a "personal-capacity" suit under

24  § 1983.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  "A person 'subjects' another to

25  the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative

26  act, participates in another's affirmative acts or omits to perform an act which he is legally

27  required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588

28

1   F.2d 740, 743 (9th Cir. 1978).

2         As to plaintiff's personal capacity claims against Officers Daniels, Chargin, Yepes, Sood,

3   Ratcliffe, Patton, and Somers, Jr. ("Individual City Defendants"), plaintiff alleges the following:

4   On or about February 13, 2014, Officer Daniels conducted a "CSAR check" and found that

5   plaintiff had completed his last thirty-day transient update on November 26, 2013.  ECF No. 1-1

6   at 13.  Then, on or about February 20, 2014, Officer Sood arrested plaintiff and transported him to

7   the Sacramento County Main Jail.  Id.  Officer Chargin followed Officer Sood into the jail on

8   charges of violating Penal Code §§ 290.11 and 290.12.[11]  Id.  Based on these facts plaintiff claims

9   that Officers Sood, Chargin, Yepes, Radcliffe, and Patton colluded with the remaining defendants

10  to humiliate and disgrace him in violation of his civil rights.

11        These facts are simply insufficient to state a claim for violation of § 1983.  First,

12  plaintiff's conclusory conspiracy claim, unsupported by any facts, is not entitled to the

13  presumption of truth.  Accordingly, it cannot form the basis of a § 1983 claim.  As for the facts

14  plaintiff properly alleges, none of them support a claim that his constitutional rights, to due

15  process or otherwise, have been violated.  To the extent plaintiff is claiming his Fourth

16  Amendment rights were violated by the arresting officer, Officer Sood, for arresting him without

17  probable cause, the court finds such a claim is unsupported by the facts.

18        Officer Sood arrested plaintiff on November 26, 2014, for violation of "Penal Code

19  290.12 felony and Penal Code 290.11 misdemeanor."  ECF No. 1-1 at 13.  Plaintiff concedes that

20  at the time of his arrest he was not in compliance with Penal Code § 290.011, which requires

21  convicted sex offenders who are transients to update their registration every thirty days.  People v.

22  Armas, 191 Cal. App. 4th 1173, 1177 (2011).  Plaintiff alleges that Officer Daniels became aware

23  of the fact that plaintiff was in violation of § 290.011 through a "CSAR check" on November 26,

24  2013.  ECF No. 1-1 at 13.  However, plaintiff argues that he was ultimately not guilty of violating

25  § 290.011 because he did not *willfully* fail to register.  ECF No. 18 at 10.  California courts have

26

27  _____
    [11]  California Penal Code §§ 290.11 and 290.12 do not exist.  Plaintiff most likely meant to refer

28  to §§ 290.011 and 290.012.  Section 290.011 governs the registration of transients, while §
    290.012 governs registration updates.

21

1   held that "[t]o be convicted of failure to register as a sex offender, a defendant must have actual

2   knowledge of the duty to register as a sex offender." People v. Aragon, 207 Cal. App. 4th 504,

3   509 (2012).  In other words, a defendant's failure to register must be purposeful, or willful.  Id.

4   　　　　Plaintiff concedes that he knew of his duty to register.  He argues, however, that his failed

5   attempts to register are evidence that his actions were not willful.  The actual facts related to his

6   failed attempts are unclear, at some point it seems that the office was closed, and at some point he

7   may have been turned away.  See ECF No. 1-1 at 11.  The court need not sift through the weeds

8   of plaintiff's allegations at this point, however, because regardless of whether plaintiff's failure to

9   register was willful, Officer Sood clearly had probable cause to arrest him.

10   　　　　"A police officer may make a warrantless arrest when the 'officer has probable cause to

11   believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has

12   been committed.'"  Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003) (quoting Cal.

13   Penal Code § 836(a)(3)).  In California, "an officer has probable cause for a warrantless arrest 'if

14   the facts known to him would lead a [person] of ordinary care and prudence to believe and

15   conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'"  Id.

16   (citing People v. Adams, 175 Cal. App. 3d 855, 861 (1985)).  Federal standards are consistent:

17
18   　　　　　　The test for whether probable cause exists is whether "at the
　　　　　　moment of arrest the facts and circumstances within the knowledge
　　　　　　of the arresting officers and of which they had reasonably
19   　　　　　　trustworthy information were sufficient to warrant a prudent
　　　　　　[person] in believing that the petitioner had committed or was
20   　　　　　　committing an offense."

21   United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005) (citation omitted), cert. denied, 547

22   U.S. 1056 (2006).  Plaintiff may allege that his failure to register was not willful, but he does not

23   explain how this leads to the conclusion that there was no probable cause for his arrest.  In fact, it

24   is unclear how Officer Sood could have even known of plaintiff's failed attempts at registering

25   and therefore conclude that plaintiff's failure to register was not willful.  Accordingly, the court

26   finds that plaintiff has not alleged facts sufficient to state a claim for violation of his Fourth

27   Amendment rights against Officer Sood.

28   　　　　The court also finds that plaintiff has not alleged facts sufficient to state personal capacity

1    claims against D.A. West, P.D. Huang, P.D. Yee, Deputy Hester, and Sheriff Jones ("the

2    Individual County Defendants").  Plaintiff seems to allege that the Individual County Defendants

3    denied him his due process right to a fair trial.  It is unclear, however, ***how*** defendants actions

4    violated his due process rights, or any other Constitutional right for that matter.  This is, again, in

5    part because plaintiff incorporates his entire statement of facts by reference into each of his

6    claims.  Plaintiff alleges a variety of facts related to the Individual County Defendants, but

7    without any direction as to which facts are relevant to which claims defendants simply cannot

8    fairly be expected to draft a response.  See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 337 (2005)

9    ("[T]he 'short and plain statement' must give the defendant 'fair notice of what the plaintiff's

10   claim is and the grounds upon which it rests . . . .").

11          As to the City of Sacramento, the Sacramento Police Department, the County of

12   Sacramento, Sacramento County District Attorney, Sacramento County Sheriff's Department, and

13   Sacramento County Public Defender's Office, plaintiff has not stated a claim for violation of §

14   1983 because he does not allege the existence of a policy or practice that caused a violation of his

15   constitutional rights.  A municipality is responsible for a constitutional violation only when an

16   "action [taken] pursuant to [an] official municipal policy of some nature" caused the violation.

17   Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  This means that a municipality is not

18   liable under § 1983 based on the common-law tort theory of respondeat superior.  Id.  Plaintiff's

19   complaint simply does not allege that any such policy exists in any of the named municipal

20   agencies.

21          D.      Section 1985 and 1986

22          Plaintiff has also failed to state a claim for violation of §§ 1985 and 1986.  In order to

23   state a claim under § 1985, a plaintiff must show that "some racial, or perhaps otherwise class-

24   based, invidiously discriminatory animus" lay behind the alleged conspirators' action and that the

25   conspiracy was aimed at interfering with protected rights secured by law to all.  Griffin v.

26   Breckenridge, 403 U.S. 88, 102 (1971); see also Bretz v. Kelman, 773 F.2d 1026, 1027–28 (9th

27   Cir. 1985).  "The absence of a section 1983 deprivation of rights precludes a section 1985

28   conspiracy claim predicated on the same allegations."  Caldeira v. County of Kauai, 866 F.2d

1175, 1182 (9th Cir. 1989).  Here, not only has plaintiff failed to state a § 1983 deprivation, but he has failed to state any facts indicating a conspiracy existed.  Accordingly, plaintiff has failed to allege facts sufficient to state a claim against either the County Defendants or the City Defendants for violation of § 1985.

Section 1986 provides a cause of action for damages where a valid claim for relief has been stated under § 1985.  Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985) ("This Circuit has recently adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985.").  Accordingly, the court finds that plaintiff has also failed to state a claim for violation of § 1986 because he has failed to state a claim for violation of § 1985.

E.    State Law Claims

1.    Claims Nine Through Twelve

The court will also recommend that plaintiff's Claims Nine through Twelve be dismissed without leave to amend as to the Entity Defendants.  The Government Claims Act, Cal. Gov't Code § 810 et seq., states that: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code § 815.  California courts have interpreted § 815 as abolishing common law tort liability for public entities.  Lloyd v. Cty. of Los Angeles, 172 Cal. App. 4th 320, 329 (2009) (citing Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 899 (2008)).  Plaintiff's Claims Nine through Twelve are all common law torts, and plaintiff has not pointed to any California statute creating an exception to § 815's ban on public entity liability.  Accordingly, the court finds that plaintiff cannot possibly state a claim for relief, even if given leave to amend, and will recommend that Claims Nine through Twelve be dismissed without leave to amend as to the Entity Defendants.

2.    Claim Thirteen

Plaintiff's Claim Thirteen is "improper use of internet website," pursuant to Penal Code § 290.4.  It is, frankly, unclear what plaintiff's claim is, or is supposed to be, based on.  For one, plaintiff specifically refers to Penal Code § 290.4(b)(1) and (A)(2) in his complaint, neither of

1  which exist.  ECF No. 1-1 at 38.  For another, § 290.4 creates a mechanism by which members of

2  the public can inquire about whether certain people are required to register as sex offenders.  See

3  People v. Nguyen, en

4       People v. Nguyen, 222 Cal. App. 4th 1168, 1189 (2014), review denied (Apr. 23, 2014)

5  (noting that Penal Code §§ 290 et al. "require[s] the state to maintain a Web site and otherwise

6  publicly disclose certain information regarding all registered sex offenders").  It does not create a

7  private right of action against the State, municipalities, or their employees.  Accordingly, the

8  court will recommend that the County Defendants' and the City Defendants' motions to dismiss

9  be granted without leave to amend as to Claim Thirteen.

10                   3.     California Tort Claims Act

11       The County Defendants argue that plaintiff's state law claims are barred by the Claims

12  Act because his complaint was filed 184 days after the denial of his tort claim by the County of

13  Sacramento.

14       California Government Code § 945.6 provides in relevant part that "any suit brought

15  against a public entity on a cause of action for which a claim is required to be presented . . . must

16  be commenced: [¶] (1) If written notice is given . . . not later than six months after the date such

17  notice is personally delivered or deposited in the mail."  California courts have interpreted this

18  provision as requiring a plaintiff to file his or her claim within six calendar months or 182 days

19  after the claims rejection notice is mailed, whichever is longer.  Gonzales v. Cty. of Los Angeles,

20  199 Cal. App. 3d 601, 604–05 (1988).  Plaintiff alleges that he filed a claim "for the injuries,

21  losses, and damages suffered and incurred by him by reason of the above-described events" on

22  August 7, 2014.  ECF No. 1-1 at 24.  Notice of rejection of that claim was mailed to plaintiff on

23  August 20, 2014, and he commenced his state court action on February 20, 2015.  Id.; Id. at 39.

24  Accordingly, plaintiff filed his state court complaint within six calendar months of the rejection of

25  his claims by the County of Sacramento, and the Claims Act does not bar his action.[12]

26  _____

27  [12]  Plaintiff's allegations regarding the City Defendants are not as straightforward.  Plaintiff alleges that he filed a claim against the City of Sacramento on September 4, 2014.  ECF No. 1-1

28  at 24.  He then alleges that "[a]n order relieving [him] from Provisions of Government Code §[ ] 945.4 was granted February 2, 2015."  Id.  Section 945.4 bars claims against public entities

1          4.      Failure to State a Claim

2          The court will recommend that plaintiff's remaining state law claims be dismissed with

3   leave to amend because the organization of the complaint does not comply with Rule 8.  As the

4   court explains above, complaints that utilize shotgun pleading do not comply with Rule 8 because

5   they do not include a clear statement about what the defendants allegedly did wrong.  See

6   Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  All of plaintiff's

7   state and federal claims utilize this style of pleading.  Accordingly, the court will recommend that

8   the City Defendants and the County Defendants' motions to dismiss be granted as to Claims Four

9   through Twelve.  The court does not, however, find that leave to amend would be futile.

10  Accordingly the court will recommend that defendants' motions be granted with leave to amend

11  as to these claims, with the exception of Claims Nine through Twelve as to the Entity Defendants

12  which (as the court discusses above) it will recommend be dismissed without leave to amend.

13  V.     Requests for Judicial Notice

14         A number of requests for judicial notice are also currently pending before the court, some

15  filed by defendants and one filed by plaintiff.  The court will deny defendants requests for judicial

16  notice as unnecessary, and grant plaintiff's request for judicial notice in part.

17         Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of

18  "adjudicative facts" which are not subject to reasonable dispute in that they are either (1)

19  "generally known," or (2) or "capable of accurate and ready determination by resort to sources

20  whose accuracy cannot reasonably be questioned."  When appropriate, a court may take judicial

21  notice of documents without converting a motion to dismiss into a motion for summary judgment.

22  MGIC Indemnity Corporation v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).  It is the

23  proponent's burden to show that the facts contained in the documents are proper subjects of

24  judicial notice.  Hurd v. Garcia, 454 F. Supp. 2d 1032, 1054–55 (S.D. Cal. 2006); Walker v.

25  _____

26  that have not been presented to and acted upon by that public entity.  Cal. Gov't Code § 945.4.  It
    is unclear, however, what order plaintiff is referring to, especially as his state court case did not
27  commence until February 20, 2015.  Regardless, the court will not pass upon plaintiff's
    compliance with the Claims Act as to the City Defendants at this juncture because the City
28  Defendants do not move to dismiss plaintiff's complaint on that ground.

1    Woodford, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (holding that the plaintiff's prison

2    medical records are not matters of public record subject to judicial notice). "Although the Rules

3    of Evidence do not expressly require a fact to be relevant for it to be judicially noticed, an

4    irrelevant fact is one not of consequence in determining the action, *see* Fed. R. Evid. 401(b), and

5    therefore cannot be classified as an adjudicative fact." Blye v. California Supreme Court, No. CV

6    11-5046-DWM, 2014 WL 295022, at *1 (N.D. Cal. Jan. 21, 2014).

7         The purpose for which a party intends to use evidence can also bear on whether a court

8    can take judicial notice of it. For example, Federal Rule of Evidence 201 does not govern the

9    judicial noticing of legislative facts. Fed. R. Evid. 201(a) ("This rule governs judicial notice of an

10   adjudicative fact only, not a legislative fact."). However, whether a fact is adjudicative or

11   legislative depends upon the purpose for which it is used. Toth v. Grand Trunk R.R., 306 F.3d

12   335, 349 (6th Cir. 2002) holding modified by Roberts ex rel. Johnson v. Galen of Virginia, Inc.,

13   325 F.3d 776 (6th Cir. 2003). For example, "[a] legal rule may be a proper fact for judicial notice

14   if it is offered to establish the factual context of the case, as opposed to stating the governing

15   law." Id.

16        In a series of requests defendants ask the court to judicially notice documents that are

17   already in the record. Specifically, defendants ask the court to judicially notice (1) plaintiff's

18   complaint; (2) the City Defendants' notice of removal; (3) plaintiff's motion to remand; (4)

19   Bratcher's motion to dismiss; (5) plaintiff's opposition to Bratcher's motion to dismiss; and (6)

20   plaintiff's motion to remand. ECF Nos. 16, 22, 43, 46. The court will deny defendants' requests

21   for judicial notice because it is unnecessary to take judicial notice of documents already in the

22   record. See, e.g., Aguirre v. Home Depot U.S.A., Inc., No. 1:10-CV-00311-LJO, 2012 WL

23   3639074, at *7 (E.D. Cal. Aug. 23, 2012).

24        Plaintiff has submitted a request that also asks the court to judicially notice a number of

25   documents, only one of which is appropriate for judicial notice. First, plaintiff asks the court to

26   judicially notice his complaint. ECF No. 56. As the court has already explained, plaintiff's

27   complaint is a document already in the record and accordingly, it is not appropriate for judicial

28   notice. Plaintiff also asks the court to judicially notice 28 U.S.C. § 1446, the statute governing

1    removal procedures.  Id.  Plaintiff does not explain how § 1446 constitutes an adjudicative fact in

2    this case however, and indeed, it is more than likely that he simply means to draw attention to the

3    statute in light of his motion to remand.  Plaintiff also asks the court to judicially notice (1) the

4    County Defendants' demurrer to plaintiff's complaint in state court; (2) the reporter's transcript of

5    the state court preliminary examination; (3) a series of state court minute orders; (4) plaintiff's

6    medical records; (5) the Sacramento Police Department's General Offense Hardcopy; (6) the

7    State's felony complaint against plaintiff; (7) the State's opposition to plaintiff's motion for

8    pretrial discovery; and (8) Sacramento County Sheriff's Department Inmate Incident Report.

9    ECF No. 56.  Plaintiff does not explain how any of these documents are relevant to the pending

10   motions in any way.  Accordingly, the court finds that plaintiff has not met his burden of showing

11   the facts contained in these documents are adjudicative, and it will deny his request as to them.

12          The only document plaintiff requests judicial notice of that is clearly relevant to a pending

13   motion in this matter is the "Declaration of Melvin Jeanmard: Re Diligence."  Id.  That document

14   purports to be evidence of service upon Judge Gweon and accordingly, it addresses the issue of

15   whether she was properly served.  Id., Exhibit B.  Whether Judge Gweon was properly served is

16   the primary, indeed the only really, question that needs to be answered to dispose of plaintiff's

17   motion to remand.  Accordingly, the court will grant plaintiff's request for judicial notice of the

18   "Declaration of Melvin Jeanmard: Re Diligence" only.

19   VI.    Leave to Amend

20          Plaintiff is advised that any amended complaint must bear the civil docket number

21   assigned this case and must be labeled "Amended Complaint"; plaintiff must file an original and

22   two copies of the amended complaint.  Plaintiff is advised that the court cannot refer to a prior

23   pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that

24   an amended complaint be complete in itself without reference to any prior or superseded

25   pleading.  This is because, as a general rule, an amended complaint supersedes the original

26   complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended pleading is

27   filed, the original pleading no longer serves any function in the case.  Id.; see also E.D. Cal. L. R.

28   220.

Any amended complaint must allege sufficient facts to support the conclusion that plaintiff's federal constitutional or statutory rights have been violated.  Plaintiff must distinguish among defendants and show particular claims against each one.  Plaintiff can do this by alleging in specific terms how each named defendant is involved and which claims or causes of action are relevant to which defendant.  Defendants may be grouped in meaningful ways, but claims vaguely referring to "defendants" are insufficient.  See McHenry v. Renne, 84 F.3d 11172,1175 (9th Cir. 1996).  Any amended complaint should focus only on specific cognizable claims.  Plaintiff need not provide numerous unnumbered and unidentified attachments to the complaint.[13]  The amended complaint should not exceed 15 pages, including attachments, if any.

Plaintiff should also refrain from filing an amended complaint until the presiding district judge has reviewed and ruled on the undersigned's findings and recommendations.  Only then will plaintiff know for certain whether he must file an amended complaint and if so, what claims he may include.

CONCLUSION

In accordance with the foregoing, THE COURT HEREBY ORDERS that:

1.  Defendants' requests for judicial notice, ECF Nos. 16, 22, 43, 46, are DENIED; and

2.  Plaintiff's request for judicial notice, ECF No. 53, is GRANTED IN PART.

THE COURT FURTHER RECOMMENDS that:

1.  Plaintiff's motion to remand, ECF No. 6, be DENIED;

2.  Judge Gweon's motion to dismiss, ECF No. 20, be GRANTED *without* leave to amend;

3.  Bratcher's special anti-SLAPP motion to strike, ECF No. 15, be GRANTED;

4.  The City Defendants' motion to dismiss, ECF No. 5, be GRANTED per the following:

i.  Claims One through Twelve be dismissed with leave to amend as to Officer Somers, Jr., Officer Chargin, Officer Yepes, Officer Sood, Officer Daniels, Officer Ratcliffe, and Officer Patton;

---

[13]  While a complaint must contain specific allegations directed to specific defendants, it should not include evidentiary matters.

ii.  Claims One through Eight be dismissed with leave to amend, and Claims Nine through Twelve *without* leave to amend, as to the City of Sacramento and the Sacramento Police Department; and

iii.  Claim Thirteen be dismissed without leave to amend;

5.  The County Defendants' motion to dismiss, ECF No. 10, be GRANTED per the following:

i.  Claims One through Twelve be dismissed with leave to amend as to Sheriff Jones, D.A. West, P.D. Huang, P.D. Yee, and Deputy Hester;

ii.  Claims One through Eight be dismissed with leave to amend, and Claims Nine through Twelve *without* leave to amend, as to the County of Sacramento, Sacramento County District Attorney, Sacramento County Sheriff's Department, and Sacramento County Public Defender's Office; and

iii.  Claim Thirteen be dismissed *without* leave to amend;

6.  Claims One through Three be dismissed *sua sponte* as to Bratcher with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 28, 2015

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

/wilb699.dism&remand

30