UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE L. WILBURN,<br><br>Plaintiff,<br><br>v.<br><br>GARREN BRATCHER, et al.,<br><br>Respondents. | No. 2:15-cv-00699 TLN GGH<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

### I. **PROCEDURAL FACTS**

The plaintiff filed a First Amended Complaint on May 4, 2016. ECF No. 61. The City of Sacramento and several of the defendants associated with it filed a Motion to Dismiss that Complaint on May 16, 2016. ECF No. 63. The Motion was originally scheduled for hearing on May 18, 2016, was rescheduled to June 23, 2016, ECF No. 64, upon receipt of a Motion to Dismiss filed by defendant Garren Bratcher filed on May 18, 2016. ECF No. 66. That June 23, 2015 hearing date was vacated by an Order to Show Cause issued by the court on June 16, 2016. ECF No. 72.

The amended complaint is a voluminous document filled with many conclusory statements regarding conspiracy and speculations about an arrest which even plaintiff concedes was based on his non-registration as a sex offender (although plaintiff states reasons for his not being registered). The court, now having reviewed all of the documents and being fully apprised

1

of the facts and law asserted in the pleadings and memoranda before it, has determined that oral argument of these matters would not be of material assistance to the court and therefore enters this Findings and Recommendations/Order.

## II.     FACTUAL BACKGROUND

1. General Allegations

In his First Amended Complaint, ECF 61, plaintiff purports to bring a 42 U.S.C. § 1983 action against the City and County, District Attorney, Public Defender, Sherriff's Department, Police Department[1] and 36 individual Sacramento City and County employees for infringement of his Fourth, Fifth and Fourteenth amendment rights.  The underlying infringements for which he seeks to recover damages are alleged to be false arrest, false imprisonment,  malicious prosecution, discrimination, assault, battery, conspiracy and infliction of emotional distress.

Plaintiff also includes a number non-institutional employees as defendants, Garren Bratcher and Does 1-4 are employees of Loaves and Fishes, Gil Manalo, Deputy Hester and Does 8-10, are both employees of the County and "duly elected or appointed officials."  He also names the Sacramento Police Chief (Samuel D. Somers, Jr.) and County Sheriff (Scott R. Jones), District Attorney Ann Marie Schubert and several Assistant DAs plus several Deputy Public Defenders and Superior Court Judge Geoffrey A. Goodman.  Does 11-16 are SAFE officers.  Finally he identifies Doe 18 as a one-time inmate at the Sacramento County Main Jail.

As to the institutional defendants, plaintiff does conclude that all actions of which he complained were taken "pursuant to customs, policies and practices of the City and County" by individuals acting under color and authority of law.  Id. at ¶ 20.

2. Facts Alleged

Plaintiff was arrested in August 2002 and ultimately pled NOLO or guilty to a violation of Cal. Penal § 220 -- Assault with intent to commit mayhem  or specified sex offenses, assault

---

[1] Plaintiff does allege, in unsupported conclusionary terms, that the institutional defendants, acting through the Sexual Assault Felony Enforcement Team Unit ["SAFE"] developed and acted upon a policy, practice or custom to effect arrests without reasonable suspicion or probable cause. ECF 61at ¶ 2:19-26.

of a person under 18 with intent to commit specified sex offenses, all in the commission of a first degree burglary -- thereby requiring him to register as a sex offender under Section 290.  He went to prison and was paroled on May 7, 2004 at which time he also entered a drug and alcohol program.  He was discharged from parole on May 7, 2007.  Id. at 24.  Plaintiff attempted to register on several occasions, but was turned away by the SAFE unit repeatedly and, oddly, apparently didn't get registered at all until November 26, 2013. Id. at ¶¶ 25-26, 31.

As a result of the foregoing plaintiff asserts that Penal Code § 290 violates the Fourteenth Amendment insofar as he is potentially faced with a felony (willful failure to register) or a misdemeanor (failure to register no less than every 30 days as a transient), but the system doesn't work. Id. at ¶¶ 27-28.

As to Loaves & Fishes, Larry the green hat, Doe 1, wouldn't let him bring his bicycle frame into Friendship Park, characterizing it as a bicycle.  The two had words, and plaintiff was restricted from entering the Park by defendant Bratcher, and Bratcher later refused to assist him with a letter to regain access.  Other Loaves and Fishes Does would not assist either, so he's suing them.  Ultimately he was banned from the North C Street property which prevented him from being "seen" at Mercy Clinic on 2/3/14 [apparently located at the same facility as Loaves and Fishes].  Id. at ¶¶ 29-30.  When plaintiff was finally able to go to the Clinic on 2/19/14, Bratcher called the police to report he was in the area, and some sort of investigation ensued for no good reason. Id. at ¶¶ 30-32.

Ultimately, various Police defendants detained him with no probable cause, handcuffed him and took him to jail on or about February 20, 2014 on PC 290.12 (annual registration) felony and 290.11 (transient registration) misdemeanor charges (not to exceed 1 year Jail, second offense 16 mo. to 2-3 years).  He is apparently also claiming they harassed him and falsified their reports. Id.

Plaintiff claims Bratcher kept reporting him to the police because he'd called Bratcher a "renege" for not helping earlier and anyone who assisted Bratcher is (obviously) in a conspiracy with him to harass plaintiff.

1    Police defendants are alleged to have continued to "investigate" him but gave no
2  plausible reason for doing so and failed to report their activities.  This ongoing investigation is
3  alleged to constitute an undefined Constitutional violation.  Id. ¶ 34.
4    Public defendant Miller is alleged to have directed plaintiff not to plead or answer the
5  judge's questions at an arraignment on 2/24/14 which resulted in his being in jail for 14 days
6  awaiting a preliminary hearing, id. at ¶¶ 35-36, *citing* Youngblood v. Gates, 200 Cal.App.3d
7  1302, 1319 (1988).  Defendants West and Huang allowed a charge of felony to be brought
8  against plaintiff but presented no evidence of the willfulness required for that crime, then tried to
9  force him to plead to a lesser to escape the threat of a felony conviction.  Id. at ¶ 38.
10   Doe 8 refused to remove defendant from a cell shared with Doe 18 when Plaintiff
11 claimed he was in danger which resulted in plaintiff being and assaulted moments later as a
12 result of which he suffered injuries that required medical treatment.  Id. at ¶ 37.
13   In addition plaintiff raises many issues regarding the way his trial was conducted, both in
14 terms of the performance of his public defense counsel before he prevailed in a Faretta motion,
15 see Faretta v. California, 422 U.S. 806 (1975): Speedy Trial issues , see Cal.Pen.Code § 1382;
16 People v. Giron-Chamul, 245 Cal.App.4th 932, 955 (2016), suppressing testimony that should
17 have exonerated him, being denied a Marsden hearing, see People v. Marsden, 2 Cal.3d 118
18 (1970), and withholding of evidence that would have proven he did not willfully fail to register
19 which would have reduced the level of charge against him from a felony to a misdemeanor.
20   The totality of is claims are:
21 (1) First Claim: Equal protection (42 U.S.C. § 1983); (2) Second Claim: Conspiracy to interfere
22 with civil rights (42 U.S.C. § 1985.3); (3) Third Claim: Negligent/intentional failure to prevent
23 deprivation of rights. (42 U.S.C. § 1986); (4) Fourth Claim: False arrest and false imprisonment
24 (Cal. Govt Code 820.4); (5) Fifth Claim: Malicious Prosecution and Abuse of Process; (6) Sixth
25 Claim: Denial of Civil Rights/Discrimination (Cal. Civil Code §§ 51, 51.5, 51.7, 52; (7) Seventh
26 Claim: Failure to Discharge Mandatory Duty (Cal. Govt Code 815.6); (8) Eighth Claim:
27 Negligence (Cal. Govt Code 815.2); (9) Ninth Claim:  Assault and Battery; (10) Tenth Claim:
28 Conspiracy; (11) Eleventh Claim:  Intentional or Reckless Infliction of Mental Distress; (12)

1  Twelfth Claim: Negligent Infliction of Mental Distress; (13) Thirteenth Claim: Improper use of

2  Internet Web Site (Cal. Pen, Code § 290.4); (14) Fourteenth Claim: Legal Malpractice

3  (Lawyers); and (15) Fifteenth Claim: Breach of Fiduciary Duty (Lawyers).

4      The plaintiff asserts that this chain of behaviors collectively demonstrates fraud,

5  corruption, and conspiracy resulting in a violation of his right to due process and equal protection

6  under both the California and federal constitutions. Id. at ¶¶ 38-45.

7      Ultimately the district attorney, who is a named defendant, dismissed all charges before

8  trial since, according to the "record" it was stated that "we got him for about all the time that we

9  would if he was convicted." Id. at ¶ 53.

10  3.    Damages Sought.  Plaintiff pleads for general damages, civil penalties not exceeding

11  $25,000 per offense for a total of $375,000, and punitive damages. He also alleges a right to

12  emotional distress damages caused by his humiliation and his inability to attend a schedule

13  Social Security benefits hearing, being prevented from attending a family funeral and the

14  prolonged incarceration for which he seeks another $250,000. Id. at ¶¶ 59-60.

### III.  MOTIONS TO DISMISS

16      The City Defendants -- City of Sacramento, Chief Samuel D. Somers, Jr., Officers

17  George Chargin, Jose Yepes, and Jeremy Ratcliffe, Sgt. Sameer Sood, Det. Bobby Daniels, and

18  Det. Kevin Patton -- bring this Motion to Dismiss them from the 11 causes of action against them

19  for failure to allege sufficient facts. They ask that the dismissal be with prejudice insofar as "his

20  two attempted pleadings" both suffer the same defect and show no plausible claims.

21  A.    Section 1981 Claim

22      By its very language it is clear that 42 U.S.C. section 1981 protects persons who are

23  members of a protected class. See Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1145 (9th

24  Cir. 2006).

> All persons within the jurisdiction of the United States shall have the same Right to make and enforce contracts, to sue, be parties, give evidence, an and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

Plaintiff does not allege that he is a member of protected class and that alone requires dismissal of this element of his complaint.

   B. Section 1983 Claims

      1.     The City of Sacramento

With regard to claims against the City of Sacramento, Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978) makes clear that a governmental entity cannot be held liable for the torts, whether statutory or constitutional, of its employees merely because it employs the alleged tortfeasors. Rather, the City can be held only if it has effected an official policy or indulged in a custom and practice of some nature and duration that led to the constitutional tort alleged. Id. at 694.

> A section 1983 plaintiff may establish municipal liability in one of three ways. First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737. (1989)(internal quotation omitted); *accord* Monell, 436 U.S. at 690–91 . . . Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81. (1986) ; McKinley v. City of Eloy, 705 F.2d 1110, 1116 (9th Cir.1983). Whether a particular official has final policy-making authority is a question of state law. See Jett, 491 U.S. at 737; City of St. Louis v. Praprotnik, 485 U.S. 112, 123–24 (1988) (plurality opinion). Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. See Praprotnik, 485 U.S. at 127; Hammond v. County of Madera, 859 F.2d 797, 801–02 (9th Cir.1988).

Gilette v. Delmore, 979 F.2d 1342, 1347-1348 (9th Cir. 1992). Plaintiff makes conclusory allegations but provides no facts to support any of these theories of liability.

Further, to show a policy or custom of the municipal entity he must allege facts to show there was a widespread practice in the City and/or the County "that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law. City of St. Louis v. Praprotnik, supra, 485 U.S. at 127 (1986). To prove this claim he would have to be able to allege repeated

6

1    constitutional violations or a pattern of similar treatment accorded others in his position. Gilette
2    v. Delmore, supra, 979 F.2d at 1349. Plaintiff states no such facts; he merely asserts that there is
3    some policy or custom but he has not articulated how it was formulated, when it was formulated,
4    what it comprises, or that there is evidence of repeated use sufficient to constitute constitutional
5    violations. To preserve plaintiff's complaint this court would have to "assume" that plaintiff's
6    experience was not a singular one. That the court cannot do. This claim should, therefore, be
7    dismissed.

        2.    The Chief of Police; Sheriff, Sacramento County

9    The Eleventh Amendment to the federal Constitution bars federal suits for violations of
10   federal law brought against state officials sued in their official capacities for damages and other
11   retroactive relief. Quern v. Jordan, 440 U.S. 332, 337 (1979); Peralta v. Dillard, 744 F.3d 1076,
12   1084 (9th Cir. 2014 (*en banc*); Pena v. Gardener, 97F.2d 469, 472 (9th Cir. 1992). The Eleventh
13   Amendment also bars federal suits for violations of state law by state officials sued in their
14   official capacity for either retrospective or prospective relief. Pennhurst State School & Hospital
15   v. Halderman, 465 U.S. 89, 103); see also Pena, 976 F.2d at 473. The Eleventh Amendment
16   does not, however, bar federal suits against state officers sued in their official capacities for
17   prospective relief emanating from ongoing violations of plaintiff's federal constitutional or
18   statutory rights. Edelman v. Jordan, 415 U.S. 651 (1974); Ex Parte Young, 209 U.S. 123 (1908);
19   Central Reserve Life of North America Ins. Co., 852 F.2d 1158, 1161 (9th Cir. 1988). Thus, the
20   Eleventh Amendment does not preclude suits against state officials for injunctive relief. See
21   Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997); Ex Parte Young, supra. This
22   is not, however, the type of relief plaintiff seeks.[2]

---

[2] Plaintiff asserts in his factual background that the registration statute under which he was arrested, Cal. Penal Code 290 is unconstitutional, but he does not in any way support this legal conclusion in opposition to the motion to dismiss. In any event, such a claim is foreclosed by Hatton v. Bonner, 356 F.3d 955 (9th Cir. 2003). This is not to say that every factual variant of an alleged failure to register cannot raise unconstitutional-as-applied concerns, e.g., a true case of registration impossibility, or registration conditions so onerous as to make them infeasible or unlawful. However, those conditions are not met here; plaintiff merely alleges that the registration requirement "does not work."

7

Plaintiff seeks to hold the Chief of Police of the City of Sacramento and the Sheriff of Sacramento County personally liable for his alleged personal and constitutional injuries, apparently solely because they head the police department and Sheriff's Office, respectively. He alleges no *facts* regarding any actions taken against him by either of these officials personally or in some other way that would give rise to individual liability. While these officials might be sued for retrospective relief in their official capacities, the undersigned finds herein that no actions are alleged for which injunctive relief would be appropriate. Plaintiff's individual claims fail to state a claim, and these claims should be dismissed with prejudice.

   3.  Individual Arresting Police Officers

The Eleventh Amendment does not bar federal suits for violations of federal law or state law against state officials correctly sued in their individual capacities for damages. Scheuer v. Rhodes, 416 U.S. 232, 238 (1974); Ashker v. California Dep't. of Corrections, 112 F.3d 392,394-395 (9th Cir.1997); Pena, supra, 976 F.2d at 473-74. Section 42 U.S.C. section 1983 provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to successfully state a claim under section 1983, plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The statute requires that there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. Plaintiff has met this threshold requirement as he has asserted that he was arrested by defendant police officers Daniels and Sood. Because of their status as municipal police officers, their actions were undertaken under color of state law and the "state action" prerequisite for a section 1983 action has been met.

Plaintiff alleges that his arrest violated both his Fourteenth and Fourth Amendment rights. His Fourteenth Amendment claim must fail since all constitutional claims resulting from

an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment rather than under substantive due process. Graham v. Connor, 490 U.S. 386, 395 (1989).

Here plaintiff admits in his Complaint that at the time of his arrest he was indeed not in compliance with the dictates of California Penal Code section 290 – the offense for which he was arrested. Thus, the action of these officers was supported by probable cause to believe that a crime had been committed. To arrest with probable cause does not result in a constitutional violation under the Fourth Amendment. Maryland v. Pringle, 540 U.S. 366, 369 (2003); Draper v. United States, 358 U.S. 307, 311-313 (1959).

Further, these officers would be entitled to qualified immunity while performing discretionary functions such as effecting arrests, so long as their conduct does not violate a clearly established statutory or constitutional right. That is, the police officers cannot have violated the Constitution by arresting a person pursuant to a facially valid statute, or at least one which is not so pernicious on its face that no reasonable officer would attempt an arrest, *e.g.*, a statute which required the arrest of only a specific racial group. Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994). Although there has been no claim for qualified immunity, it is an inevitable issue in this case that can be addressed at this point in light of the fact that there was probable cause for arrest. To be eligible for qualified immunity two questions must be resolved: (1) do the facts pleaded, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635, 638-639 (1987). Both of these questions must be answered in the affirmative given the absence of facts that would lead the court to a contrary conclusion and plaintiff's own admission in the Complaint that he was at the time of his arrest in violation of section 290, and the fact that this statute has previously been held to be constitutional. See footnote 2, supra.

This analysis results in the conclusion that the police officers who made the arrest are entitled to the dismissal of the complaint against them, with prejudice.

9

    4.    <u>Other Police Officers</u>

The other named police officers have no specific factual allegations leveled against them. Instead plaintiff asserts that they "maliciously contriv[ed] intending to injure [him] in [his] good name and to bring [him] into public disgrace and scandal without probable cause" in collusion with the SAFE police unit that is responsible for enforcing Penal Code section 290. ECF 61 at ¶34. These allegations amount to nothing more than plaintiff's peculation or surmise and contain no facts to support them. Therefore, these officers (and those identified only as Doe defendants) are entitled to a dismissal of the complaint against them for failure to state a cognizable claim.

    5.    <u>Judge Geoffrey F. Goodman</u>

All of the allegations against Judge Goodman are aimed at his performance of his judicial duties. In paragraphs 50 and 51 of his complaint, ECF 61 at pp.25-26, plaintiff states his case against Judge Goodman as stemming from the Judge's dismissal of plaintiff's preliminary hearing which resulted in his extended pre-trial confinement. This, plaintiff contends, shows he's part of the conspiracy and that he personally violated the law. <u>Id</u>. at ¶¶ 50-51. Judge Goodman, however, is entitled to absolute immunity for actions taken within the scope of his judicial duties. <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). Further, not even allegations of conspiracy between a judge and prosecutor or others to "predetermine the outcome of a judicial proceeding" are sufficient to overcome this immunity. <u>Lacy v. Maricopa County</u>, 693 F.3d 896, 936, 937 (9th Cir. 2012). For this reason the complaint against Judge Goodman would ultimately be dismissed and this court is not required to await a motion to do that which is inevitable. This claim should be dismissed with prejudice.

    6.    <u>Loaves and Fishes, Larry the Green Hat, and related Doe Defendants</u>

These defendants are private citizens with no connection to government and thus any actions they took were not taken as persons acting under color of state law, which is a prime requisite for an action under 42 U.S.C. section 1983 and related statutes asserted in this complaint. <u>See West v. Atkins</u>, <u>supra</u>. The only way they can be held to liability is if, as plaintiff claims, they participated with public actors in a conspiracy to injure plaintiff.

In order to successfully plead a conspiracy a plaintiff must demonstrate the existence of "'an agreement or 'meeting of the minds' to violate constitutional rights.'" United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir.1989) (*en banc*) (*quoting* Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1983)). The defendants must have, "by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir.1999), *quoting* Vieux v. East Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir.1990)); see also Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

Moreover, "[t]o state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy'" Olsen v. Idaho State Bar Bd. Of Medicine, 363 F.3d 916 (9th Cir. 2004), *quoting* Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). Iqbal's plausible complaint rule must be satisfied in a conspiracy claim as in any other type of claim. Lacey v. Maricopa County, supra, 693 F.3d at 935.

Here, plaintiff has described conduct, but he has failed to allege any facts to show that the conduct he describes can be determined to constitute a conspiracy to violate his rights in either his original or his Amended Complaint. The mere reporting of a potential crime to police officers is not an actionable conspiracy as the citizen does not become a state actor by the mere reporting of a potential crime. Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989). This is true even if the private entity might have been using the crime report as a means to eject plaintiff from the premises or its vicinity. See Villegas v. Gilroy Garlic Festival, 541 F.3d 950 (9th Cir. 2008) (en banc) (a private entity enforcing a dress code does not becomes a state actor merely because police were present at the entity's festival for safety purposes and escorted a plaintiff out of the festival at the entity's request for violation of the dress code). This conspiracy claim against numerous private actors should be dismissed. (See also Section C below).

  7.  <u>Failure to Protect Claim</u>

Plaintiff has alleged that a jail officer, named only as Doe 8, refused to remove plaintiff from a cell after he complained that his cell mate, identified only as Doe 18, had threatened him,

1  that he was fearful he would be attacked, that he actually was thereafter attacked, and that he
2  required medical attention for his injuries.  These facts are apparently intended to constitute a
3  claim for violation of his Eighth Amendment Rights.  ECF 64-1 at ¶ 37.  In order to plead such a
4  claim successfully, the plaintiff must show that he was "incarcerated under conditions posing a
5  substantial risk of serious harm and that prison officials were deliberately indifferent to his need
6  for protection."  Clifford v. Gibbs, (*per curiam*) 204 F.2d 1115 (5th Cir. 1999) *quoting* Neals v.
7  Norwood, 59 F.3d 530, 533 (5th Cir. 1995).
8    "In order to be actionable under 1983, however, we believe that more than an isolated
9  incident of negligent failure to protect must be alleged.  The federal courts have stated on
10 numerous occasions that absent unusual circumstances they will not intervene in the internal
11 administration of state prison systems."  Williams v. Field, 416 F.2d 483, 485 (1969)(Citations
12 omitted).  The Williams court ultimately concluded that one seeking to recover for an Eighth
13 Amendment violation has to show a "bad faith oppressive motive" in order to elevate an
14 "isolated instance of failure to protect a prisoner from attack by a fellow inmate" into a federal
15 constitutional claim under the Eighth Amendment.  Id. at 486.  Plaintiff has not provided facts to
16 support the elevation of the isolated instance to which he refers that would permit retention of
17 this claim.  Therefore, it must be dismissed, but with this one claim, amendment is possible so
18 the dismissal should be without prejudice.
19   C.  Section 1985 and 1986 Claims
20   The undersigned repeats much of what was set forth in the Court's previously filed order
21 regarding the motions to dismiss.
22   Plaintiff has also failed to state a claim for violations of §§ 1985 and 1986.  In order to
23 state a claim under § 1985, a plaintiff must show that "some racial, or perhaps otherwise class-
24 based invidiously discriminatory animus" lay behind the alleged conspirators' action and that the
25 conspiracy was aimed at interfering with protected rights secure by the law to all.  Griffin v.
26 Breckenridge, 403 U.S. 88, 102 (1971); see also, Bretz v. Kelman, 773 F.2d 1026, 1027-28 (9th
27 Cir. 1985).  "The absence of a section 1983 deprivation of rights precludes a section 1985
28 conspiracy claim predicated upon the same allegations."  Caldeira v. County of Kuai, 866 F.2d

1175, 1182 (9th Cir. 1989). As set forth above, not only has plaintiff failed to allege any viable § 1983 claims, he has totally failed to allege any facts, as opposed to speculations and conclusions, concerning a conspiracy. All § 1985 claims should be dismissed.

Section 1986 provides a claim for damages where a valid claim for relief has been stated under § 1985. Trerice v. Pederson, 769 F.2d 1398, 1403 (9th Cir. 1985). ("This Circuit has recently adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. §1986 absent a valid claim for relief under section 1985."). Accordingly, plaintiff has not set forth a claim under § 1986.

D. Amendment of Federal Claims

The undersigned understands full well that the Federal Rules require a liberal view towards granting leave to amend, See DCD Programs, Ltd v. Leighton, 833 F.2d 183 (9th Cir. 1987) (setting forth the general rule and factors for declining leave to amend), but there are limits. Here plaintiff has been given an opportunity to amend his complaint to state facts, not conclusions, regarding his problematic conspiracy theories and facts regarding a cognizable claim. With the exception of one failure to protect claim, there does not appear to be any potential to state a claim against any of the defendants. Moreover, "suing everyone in sight" bears the hallmark of a spite suit in which plaintiff is desirous of keeping numerous defendants spinning their wheels in litigation for as long as possible because plaintiff believes they deserve to be punished. Fed.R.Civ.P. 1 requires that the federal rules, including Fed.R.Civ. P 15, be interpreted to acquire the just, speedy and inexpensive resolution of a lawsuit. All of the above weigh in favor of not granting leave to amend with the exception of the aforementioned failure to protect claim.

Therefore, the undersigned recommends that leave to amend be granted for only the failure to protect claim.

E. Remaining State Law Claims

All of the claims (Third through Fifteenth) remaining in the Complaint are supplemental state claims over which this court has jurisdiction only pursuant to 28 U.S.C. § 1367. District Courts are not required to retain jurisdiction of such supplemental claims when dismissing the

claims upon which primary federal court jurisdiction is established, id. at. § 1367(b)(3), or in exceptional circumstances where there are other compelling reasons for declining to exercise jurisdiction. Id. at § 1367 (b)(4).  This is a case where the state law claims predominate over the one possibly remaining failure to protect claim, and even if plaintiff were able to finally state a federal claim for his jail experience, there is no requirement that the federal court retain jurisdiction over unrelated state claims.  See Won Woong Im v. Jin Const. etc., 2004 WL 2004 WL 2203473 (N.D. Cal. 2004).  See also Coelho v. MRC II, 2012 WL 424387 (C.D. Cal. 2012).

Here, plaintiff has had an opportunity to attempt to properly plead his federal claims and he has failed on both occasions.  These claims should therefore be dismissed without prejudice.  The state claims may, under these circumstances, be brought to the state Superior Court for adjudication before a court with much broader experience with the claims that remain at issue after this decision.  Plaintiff would be well advised to prune his complaint to cognizable state law claims and defendants against whom there is any potential for success.

For the foregoing reasons, the court Recommends as follows:

1. Plaintiff's First, Second and Third claims be dismissed with prejudice for failure to state a claim under federal law;

2. Plaintiffs Fourth, Fifth, Sixth Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Claims be dismissed without prejudice so they may be repleaded in the State court if plaintiff so wishes.

3. Plaintiff may if he so chooses,[3] within 30 days of the service of this Order file a Second Amended Complaint *only* for violation of his Eighth Amendment right to be free of cruel and unusual punishment resulting from Doe 1's alleged failure to protect him from serious bodily injury while incarcerated.  He must, however, plead consistent with the requirements of both the Local Rules of this Court and Federal Rule of Civil Procedure 8(a)[4] which dictate that in order to

---

[3] Plaintiff may, in the alternative, elect to join this claim with his state claims and bring a single action in State court which has concurrent jurisdiction over federal question litigation.

[4] Plaintiff may acquire a copy of this court's Local Rules from the Clerk of the Court.  The Federal Rules of Civil Procedure are available online at https://www.federalrulesofcivilprocedure.org.

state a claim a complaint must contain a (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of facts showing that the pleader is entitled to relief, and (3) a demand for the relief sought.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Amended Findings and Recommendations."  Failure to file objections and/or the permitted Second Amended Complaint within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir.1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: July 27, 2016

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE